IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICARDO RUIZ MONTES,<br><br>    Movant,<br><br> vs.<br><br>UNITED STATES OF AMERICA,<br><br>    Respondent. | CASE NO. 1:06-CR-00342-LJO<br><br>**ORDER ON 28 U.S.C. § 2255 MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**<br>(Doc. 421) |

## INTRODUCTION

Ricardo Ruiz Montes ("Mr. Montes") is a federal prisoner and proceeds pro se to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 ("section 2255"). He asserts two ineffective assistance of counsel claims and requests appointment of counsel. Having considered the arguments presented, this Court DENIES Mr. Montes' motion and his request for appointment of counsel.

## BACKGROUND

**A. Facts**

From September 2004 until September 2006, Mr. Montes and Luke Scarmazzo ("Mr. Scarmazzo") co-found and ran a marijuana dispensary in Modesto, California. The dispensary was called the California HealthCare Collective ("CHC"). The duo set up a corporation, obtained a business license from the City of Modesto ("the City"), and paid taxes. (Doc. 363, p. 68-69). Mr. Montes was the executive director of the organization and had general supervision and control over the business. (Doc. 363, p. 85). Mr. Scarmazzo was the secretary and treasurer and filed declarations of gross receipts with the City for tax purposes. (Doc. 427-1). At one point, CHC had approximately eleven employees on its payroll. (Doc. 361, p. 242). During the two years the dispensary operated it grossed over $9 million dollars. (Doc. 363, p. 61).

Throughout CHC's existence Mr. Montes and Mr. Scarmazzo had several interactions with law enforcement officials. The incident most relevant to the instant motion is a traffic stop that occurred on October 18, 2005. Officer Brian Chandler ("Officer Chandler") of the Modesto Police Department

testified that he was backing up another officer who was in route to a call regarding a suspicious person breaking into a vehicle. (Doc. 359, p. 237, 240). The vehicle involved in the call was a dark colored late model Cadillac sedan. (Doc. 359, p. 237). While driving, Officer Chandler spotted the vehicle, got behind it, and turned on his police lights to make a traffic stop. (Doc. 359, p. 237-38). After Officer Chandler turned on his lights, he saw the driver reach under the driver's seat which caused the officer to become suspicious. (Doc. 359, p. 238). Eventually, the driver stopped but there was still movement inside the vehicle. (Doc. 359, 238). Due to the driver's suspicious behavior, Officer Chandler verbally commanded the driver to exit the vehicle. (Doc. 359, p. 238). After a cursory search of the driver, Officer Chandler handcuffed him and detained him in the back of his police car. (Doc. 359, p. 239-40). The driver was eventually identified as Mr. Montes. (Doc. 359, p. 239). After Mr. Montes was detained, he told the officers that he had a firearm in the vehicle. (Doc. 359, p. 242-43).

Officer Chandler and his partner approached the vehicle to ensure that there were no other occupants. (Doc. 359, p. 241). The officers smelled a strong marijuana odor and when Officer Chandler approached the driver's side of the vehicle he saw an inch and a half of a semi-automatic handgun under the driver's seat. (Doc. 359, p. 241). Officers also found a fully loaded magazine for the handgun in the glove compartment and a plastic shopping back on the floor in the backseat that contained $48,000 in cash. (Doc. 359, p. 250, 252). The officers called a narcotics canine to search the vehicle. (Doc. 359, p. 241). No marijuana was found, (Doc. 359, p. 242), and eventually someone was able to confirm that Mr. Montes was not involved in the incident regarding the stolen vehicle. (Doc. 359, p. 240-41). The firearm was registered to Mr. Montes. (Doc. 359, p. 254).

**B. Indictment**

In 2006, Mr. Montes and eight others were indicted pursuant to an eighteen count indictment. (Doc. 3). Mr. Montes was indicted for the following counts:

Count 1: Conducting a continuing criminal enterprise, in violation of 21 U.S.C. § 848;

Count 2: Conspiracy to manufacture, distribute and possess with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) & 846;

Count 3: Manufacture of marijuana and aiding and abetting, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 18 U.S.C. § 2;

| | | |
|---|---|---|
| Count 4: | Possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1); | |
| Count 6: | Possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1); | |
| Count 7: | Possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1); | |
| Count 8: | Possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1); | |
| Count 11: | Manufacture of marijuana and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; | |
| Count 13: | Possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1); | |
| Count 14: | Possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1); | |
| Count 15: | Possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1); | |
| Count 18: | Conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(h). | |

**C. Conviction and Sentence**

After a jury trial, Mr. Montes was found guilty of Counts 1, 3, 7, 13, and 14. (Doc. 335). Mr. Montes was sentenced to 240-months imprisonment, the mandatory minimum, for conducting a continuing criminal enterprise (Count 1); 121-months imprisonment for manufacturing marijuana and aiding and abetting (Count 3); and 60-months imprisonment for the possession with intent to distribute convictions (Counts 7, 13, and 14). (Doc. 335, p. 3). The sentences were ordered to run concurrently. (Doc. 335, p. 3). At sentencing, Mr. Montes filed his notice of appeal. (Doc. 372, p. 75-76).

**D. Direct Appeal**

On appeal, Mr. Montes argued that the district court erred in its *in limine* rulings, in denying his motion for a new trial, and in its imposition of his sentence. Mr. Montes also argued that his sentence violated the Eighth Amendment and that the district court erred in denying his request for an evidentiary

hearing on the grounds of juror misconduct. In addition, Mr. Montes raised several arguments related to the Controlled Substances Act.[1] The Ninth Circuit affirmed the district court's judgment. *See United States v. Montes*, 628 F.3d 1183 (9th Cir. 2011); *United States v. Montes*, 421 Fed. Appx. 670 (9th Cir. 2011).

Mr. Montes petitioned for a writ of certiorari, which the Supreme Court denied on May 16, 2011. *Montes v. United States*, 131 S. Ct. 2468 (2011).

**E. Section 2255 Motion**

On April 1, 2012, Mr. Montes filed the instant section 2255 motion in which he raises two ineffective assistance of counsel claims.[2] (Doc. 421). First, he contends that he received ineffective assistance of counsel when his trial counsel failed to argue that the CHC business records presented to the Grand Jury violated his Fifth Amendment privilege against self incrimination and right to due process. (Doc. 421, p. 5-11). Second, he argues that he received ineffective assistance of counsel when his trial counsel failed to move to suppress the gun seized during an allegedly unlawful traffic stop. (Doc. 421, p. 11-15). Mr. Montes also requests appointment of counsel. (Doc. 421, p. 15).

The government was ordered to file an opposition to Mr. Montes' motion (Doc. 422) to which it complied (Doc. 427). On May 22, 2012, Mr. Montes filed a motion for an extension of time to file a reply brief (Doc. 430) and on June 13, 2012, Mr. Montes filed a reply brief (Doc. 434). This Court DENIES Mr. Montes' motion for an extension of time as moot and declines to consider his reply brief. This Court's April 23, 2012, order clearly advised the parties that no further submissions would be accepted after the government's opposition was filed. (Doc. 422)

**LEGAL STANDARD**

To demonstrate ineffective assistance of counsel, a petitioner must establish deficient performance and prejudice. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). In order to establish

---

[1] Specifically, Mr. Montes argued that the Controlled Substances Act : (1) is unconstitutional as applied to him because it exceeds Congress' Commerce Clause authority; (2) is an impermissible exercise of police power that is reserved to the State of California under the Tenth Amendment; (3) unconstitutionally infringes upon fundamental rights protected by the Fifth and Ninth Amendments; and (4) is unenforceable against him due to the common law doctrine of necessity.

[2] It is of no consequence that Mr. Montes failed to raise his ineffective assistance of counsel claims on direct appeal. *See United States v. Withers*, 638 F.3d 1055, 1066 (9th Cir. 2011) ("Ineffective assistance of trial counsel is grounds for habeas relief, and such a claim need not be raised on direct appeal to preserve it for collateral attack.").

deficient performance, petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. This requires petitioner to "show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 687-88. There is a strong presumption that counsel's performance fell within the "wide range of professional assistance." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (quoting *Strickland*, 466 U.S. at 689). "[T]he defendant must surmount the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *United States v. Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995) (internal quotation marks and citations omitted). "Thus, the proper inquiry is whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* (internal quotation marks and citations omitted).

The second factor petitioner must establish is prejudice. *Strickland*, 466 U.S. at 693. Prejudice occurs when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Prejudice analysis must not only focus on outcome determination but also on the question of whether or not "the result of the proceeding was fundamentally unfair or unreliable." *United States v. Palomba*, 31 F.3d 1456, 1461 (9th Cir. 1994) (*quoting Lockhart v. Fretwell*, 506 U.S. 364, 368 (1993)). "A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the [petitioner] as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697.

**DISCUSSION**

**A. Business Records**

Mr. Montes contends that he received ineffective assistance of counsel when his trial counsel failed to argue that the business records presented to the Grand Jury[3] violated his Fifth Amendment privilege against self incrimination and right to due process. Mr. Montes asserts that he was forced by the unconstitutional reporting requirement of California's Compassionate Use Act and California's

---

[3] According to the government, the business records were obtained by Grand Jury subpoena and presented to the magistrate judge issuing the complaint. (Doc. 427, p. 12). The records were never presented to the Grand Jury nor introduced at trial. (Doc. 427, p. 12).

5

Medical Marijuana Program Act to create, maintain, and turnover incriminating records. Mr. Montes maintains that the reporting requirements target "a highly selective group inherently suspect of criminal activities" in "a field permeated with [federal] criminal statutes" and requires the disclosure of illegal activity and financial accounting. (Doc. 421 p. 6). Mr. Montes further argues that his Fifth Amendment due process rights were violated when the City turned the business records over to federal authorities.

Mr. Montes is unable to show that his counsel's "representation fell below an objective standard of reasonableness," *Strickland,* 466 U.S. 687-88, because the City's business record reporting requirement did not violate Mr. Montes' Fifth Amendment privilege against self incrimination. Thus, any motion or argument related to this issue would have been futile. Under the Fifth Amendment, "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." "The Fifth Amendment's protection applies only when the accused is compelled to make a testimonial communication that is incriminating." *Baltimore City Dept. of Soc. Serv. v. Bouknight*, 493 U.S. 549, 554 (1990) (emphasis and internal quotation marks omitted). "[T]he Fifth Amendment privilege may not be invoked to resist compliance with a regulatory regime constructed to effect the State's public purposes unrelated to the enforcement of its criminal laws." *Id*. at 556.

Here, the information requested by the City was not incriminating. The City required businesses operating within its boundaries to submit quarterly declarations of gross receipts. The declarations were required from all businesses. (Doc. 427-1, p. 9-10). The CHC complied with this rule and submitted documentation of their gross receipts. (Doc. 427-1, p. 1-6). The declarations provide the name of the business, the amount of its gross receipts, and the total tax due. (*Id*.). The declarations do not provide the types of products sold by the business nor is there any indication that the business was involved in illegal activity. (*Id*.). Accordingly, the information requested by the City was not incriminating.

Mr. Montes contends that he was forced to give the business records to the City by the unconstitutional reporting requirements of California's Compassionate Use Act, Cal. Health & Safety Code § 11362.5, and California's Medical Marijuana Program Act, Cal. Health & Safety Code §§ 11362.7-11362.9. He further argues that these reporting requirements target "a highly selective group inherently suspect of criminal activities." (Doc. 421, p. 6). Mr. Montes' contentions are unavailing because neither act contains reporting requirements. "The Compassionate Use Act . . . ensures that

Californians who obtain and use marijuana for specified medical purposes upon the recommendation of a physician are not subject to certain criminal sanctions." *People v. Wright*, 40 Cal. 4th 81, 84 (2006). The Medical Marijuana Program Act does contain a section that allows a city to adopt "local ordinances that regulate the location, operation, or establishment of a medical marijuana cooperative or collective." Cal. Health & Safety Code § 11362.83. However, the information obtained here was not obtained as the result of such an ordinance. Rather, the City required all of its business to submit declarations regarding its gross receipts. (Doc. 427-1, p. 9-10). Moreover, as pointed out by the government, Mr. Montes never invoked his Fifth Amendment privilege against self incrimination when requested by the City to submit the records. (Doc. 427, p. 14). Thus, any argument counsel could have raised related to this issue would have been futile.

With regard to Mr. Montes' Fifth Amendment due process contention, because the business records were not obtained in violation of Mr. Montes' Fifth Amendment right against self incrimination, the fact the City gave the business records to federal authorities did not create a Fifth Amendment due process violation.

Moreover, even if counsel's performance was deficient, Mr. Montes would be unable to establish prejudice. Prejudice occurs when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The prejudice analysis focuses not only on outcome determination but also on whether "the result of the proceeding was fundamentally unfair or unreliable." *Palomba*, 31 F.3d at 1461. Mr. Montes would be unable to show a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different," *Strickland*, 466 U.S. at 694, because, as pointed out by the Ninth Circuit on direct appeal, "the prosecution presented overwhelming evidence that [Mr. Montes] co-founded and openly ran a marijuana dispensary in Modesto, California." *Montes*, 628 F.3d at 1186. Accordingly, counsel's alleged failure to challenge the use of the business records did not affect the outcome of the case.

The business records relate to Mr. Montes' conviction for conducting a continuing criminal enterprise, in violation of 21 U.S.C. § 848. "In order to prove a continuing criminal enterprise, the government must show that (1) the defendant's conduct constituted a felony violation of federal

7

narcotics law; (2) the described conduct occurred as part of a continuing series of violations; (3) the defendant undertook the activity in concert with five or more persons; (4) the defendant acted as the organizer, supervisor or manager of the criminal enterprise; and (5) the defendant obtained substantial income or resources from the purported enterprise." *United States v. Garcia*, 988 F.2d 965, 967 (9th Cir. 1993) (internal quotation marks omitted). "The continuing series of violations requirement can be satisfied by showing three or more federal narcotics violations." *Id*. (internal quotation marks omitted).

The record contains sufficient evidence to convict Mr. Montes of this offense. Mr. Montes' conduct constituted a felony violation of federal narcotics law because he was convicted, amongst other offenses, of two counts of possessing with intent to distribute marijuana. (Doc. 335). Mr. Montes' conduct occurred as part of a continuing series of violations because he was convicted of more than three federal narcotics violations.[4] It is evident that Mr. Montes' undertook the activity in concert with five or more persons because Mr. Scarmazzo testified that the dispensary initially employed four to five people but as the business grew more employees were hired. (Doc. 363, p. 192). In addition, an employee phone list contained more than ten people (Doc. 361, p. 236) and eleven people were on the payroll (Doc. 361, p. 242). It is clear that Mr. Montes acted as the supervisor of the criminal enterprise because his own testimony provides that he had general supervision, direction, and control over the corporation. (Doc. 363, p. 85). Finally, the record shows that Mr. Montes obtained substantial income from the enterprise because Agent Bryan Barger testified that the dispensary grossed $9,056,467. (Doc. 363, p. 61). Thus, even if counsel's performance was deficient, Mr. Montes would be unable to show that the outcome of the proceeding would have been different or that "the result of the proceeding was fundamentally unfair or unreliable." *Palomba*, 31 F.3d at 1461.

**B. Suppression of Handgun**

Mr. Montes contends that he received ineffective assistance of counsel when his trial counsel failed to move to suppress the gun seized during the October 18, 2005, traffic stop. Mr. Montes contends that he was prejudiced at sentencing as a result of this error because possession of the firearm resulted in a two level increase in his offense level.

---

[4] Mr. Montes was convicted of two counts of possessing with intent to distribute marijuana, manufacture of marijuana and aiding and abetting, and possession with intent to distribute marijuana and aiding and abetting. (Doc. 335).

"A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the [petitioner] as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697.

Mr. Montes was not prejudiced by counsel's alleged deficiency because Mr. Montes was sentenced to the 240-month mandatory minimum for conducting a continuing criminal enterprise. (Doc. 372, p. 68, 71-72). *See* 21 U.S.C. 848(a) ("Any person who engages in a continuing criminal enterprise shall be sentenced to a term of imprisonment which may not be less than 20 years . . ."). Thus, even if counsel's performance was deficient for failing to move to suppress the gun, the two level increase did not affect Mr. Montes' sentence. Moreover, even if Mr. Montes would have been sentenced pursuant to the guidelines it is unlikely that counsel's failure to suppress the gun seized during the traffic stop would have affected Mr. Montes' sentence because there were several guns involved in this offense, any one of which could have supported the enhancement.[5] Because Mr. Montes was sentenced pursuant to a statutory mandatory minimum, the two level increase he received for possessing a dangerous weapon did not affect his sentence. Thus, Mr. Montes is unable to show a reasonable probability that but for counsel's failure to move to suppress the gun seized during the traffic stop, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694.

**C. Request for Appointment of Counsel**

Mr. Montes requests appointment of counsel based on the complexity of the issues at hand. (Doc. 421, p. 15). 18 U.S.C. § 3006A(a)(2) authorizes a district court to appoint counsel in a section 2255 proceeding whenever "the court determines that the interests of justice so require" and the movant is financially eligible. Because Mr. Montes' claims lack merit and the assistance of counsel would not aid him in presenting them in a more persuasive manner, this Court finds that the interests of justice do not require the appointment of counsel. *See Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983) (per curiam) ("In deciding whether to appoint counsel in a habeas proceeding, the district court must evaluate the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved.").

Mr. Montes' request for appointment of counsel is DENIED.

---

[5] The presentence report ("PSR") provides that a pistol and 63.28 pounds of marijuana were found in the safe at CHC and a handgun and marijuana were found in Mr. Montes' master bedroom. (PSR, p. 11, ¶ 31).

**D. Certificate of Appealability**

28 U.S.C. § 2253(c)(1) precludes an appeal from a final order in a section 2255 proceeding unless a circuit justice or judge issues a certificate of appealability ("COA"). A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Slack v. McDaniel*, 529 U.S. 473, 483 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. at 484; *see also Miller-El v. Cockrell*, 537 U.S. 322, 341-42 (2003). To meet this standard, the petitioner "must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues in a different manner; *or* that the questions are adequate to deserve encouragement to proceed further." *Lambright v. Stewart*, 220 F.3d 1022, 1024-25 (9th Cir. 2000) (alteration in original) (internal quotation marks and brackets omitted) (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). In the absence of a COA, no appeal in a section 2255 proceeding may be heard. 28 U.S.C. § 2253(c).

This Court has reviewed the record of this case and finds that the issues are not debatable among jurists of reason. *See Lambright*, 220 F.3d at 1024-25. Accordingly, a COA is improper.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. DENIES Mr. Montes' motion for extension of time to file a reply brief (Doc. 430);
2. DENIES Mr. Montes' section 2255 motion to vacate, set aside, or correct sentence (Doc. 421);
3. DENIES Mr. Montes' request for appointment of counsel (Doc. 421); and
4. DENIES Mr. Montes' COA.
5. The clerk is directed to close case no. 1:12-cv-00601-LJO.

IT IS SO ORDERED.

**Dated:** **July 9, 2012**         /s/ Lawrence J. O'Neill
                                    UNITED STATES DISTRICT JUDGE